**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 19-cv- |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| TRIEDSTONE FULL GOSPEL BAPTIST CHURCH, | ) ) ) ) | |
| Defendant. | ) ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

NOW COMES the Plaintiff, PHILADELPHIA INDEMNITY INSURANCE COMPANY ("PIIC"), by and through its undersigned counsel, HEPLERBROOM, LLC, and pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 hereby submits the following Complaint for Declaratory Judgment against the Defendant, TRIEDSTONE FULL GOSPEL BAPTIST CHURCH ("Triedstone"), and alleges as follows:

**THE PARTIES**

1. At all times relevant, Plaintiff, PIIC, is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business located at One Bala Plaza, Suite 100, Bala Cynwyd, Pennsylvania. (A true and accurate copy of the Illinois Department of Insurance records is attached and incorporated as Exhibit A).

2. At all times relevant, the Defendant, Triedstone, is a corporation organized and existing under the laws of the State of Illinois with its principal place of business located at 1415 W. 104th Street, Chicago, Illinois. (A true and accurate copy of the Illinois Secretary of State records is attached and incorporated as Exhibit B).

**JURISDICTION AND VENUE**

3. PIIC brings this insurance coverage action for the purpose of determining its rights and indemnification obligations, if any, under commercial lines policies bearing Nos. PHPK1071584, effective October 1, 2013 to October 1, 2014, and PHPK1399383, effective October 1, 2015 to October 1, 2016, both issued to Triedstone (hereinafter collectively referred to as "the Policies") for Defendant's claim for benefits thereunder relative to a May 20, 2014 hail loss and a February 19, 2016 wind loss.

4. By virtue of PIIC being incorporated and having a principal place of business in Pennsylvania and Triedstone being incorporated and having its principal place of business in Illinois, complete diversity exists between the pursuant to 28 U.S.C. §1332(a)(1) and 28 U.S.C. §1332(c)(1).

5. This Court has jurisdiction of this civil action pursuant to 28 U.S.C. §1332(a)(1), in that the Defendant seeks indemnity damages in excess of $75,000.00 under the Policies and this action is between citizens of different states.

6. Venue is proper in this district pursuant to 28 U.S.C. 1391(a)(1) and (a)(2), in that the acts and claim activity occurred, and the subject real property giving rise to this action are situated within Cook County, Illinois, which lies within the geographical boundaries of the United States District Court for the Northern District of Illinois.

7. This matter is ripe for adjudication as there is an actual and justiciable controversy between the parties as to the amounts owed, if any, under the Policies.

**INSURANCE CLAIM AND APPRAISAL DEMAND**

8. On or around April 18, 2017, Triedstone initially reported a single claim to PIIC alleging hail and wind damage to its property located at 1415 W. 104th Street and 10422 S. Charles Street, in Chicago, Illinois. The claim identified the date of loss as February 28, 2017 and was

submitted under PIIC Policy No. PHPK1240709, effective October 1, 2016 to October 1, 2017, issued to Triedstone. The claim specifically alleged damage to the shingles on the property's roof, water damage to gutters and surrounding windows of both buildings and aluminum siding damages. (A true and accurate copy of the notice of claim is attached and incorporated as Exhibit C).

9. On April 19, 2017, PIIC received a contract and notice of representation from Mr. Matt LaPointe with Matrix Adjusters, Inc. as the Public Adjuster for Triedstone. (A true and accurate copy of the adjuster contract is attached and incorporated as Exhibit D). Subsequently, PIIC retained Mr. Michael Darrow with Engle Martin & Associates as its Independent Adjuster. After a joint inspection, Mr. LaPointe inspected the property and recommended that the roofs of both buildings be completely replaced and that the siding be replaced on one of the buildings. Conversely, Mr. Darrow discovered some damage on the roof and some interior water damage, but determined that a complete roof replacement was unnecessary since there had been other repairs made to the roof in the past.

10. In May 2017, Mr. Darrow retained Mr. Carl J. Schoenberger of EFI Global to conduct an engineering inspection of the property. Mr. Schoenberger inspected the property along with Mr. LaPointe on May 24, 2017. In his June 9, 2017 report, Mr. Schoenberger determined that there was no functional damage due to hail observed to the roof coverings of the church building or the Learning Center. (A true and accurate copy of Mr. Schoenberger's Report is attached and incorporated as Exhibit E). According to Mr. Schoenberger, if hail had occurred at the property, it did not have sufficient size, density or speed to cause functional damage to the roof coverings. Mr. Schoenberger further concluded that indentations of up to three quarters of an inch in diameter were observed on the metal roof components, fascia, coping, gutters and siding which were consistent with hail strikes. However, Mr. Schoenberger did not observe any loss in function to

these components. Mr. Schoenberger stated that the probable date of loss related to hail impacts was May 20, 2014 when hail larger than three quarters of an inch was reported at the location per weather reports.

11.     Mr. Schoenberger also observed evidence of cumulative wind damage in the form of displaced shingle tabs on the rear roof slope over the church, the metal soffit of the Learning Center and the metal coping on the church building. However, Mr. Schoenberger believed that the wind speeds on the reported date of loss were unremarkable and such damage probably did not occur on the alleged date of loss. Based on the rust present on the nails below the missing shingles and exposed wood below the coping, Mr. Schoenberger concluded that the damage occurred from a previous wind event many years prior to the date of loss, probably on February 19, 2016, based on weather records. He did not notice any wind-related damage to the Learning Center roof but did notice that the organic shingled roof coverings were in extremely poor condition due to excessive heating and the age of the shingles. According to Mr. Schoenberger, the age and condition of the roof made it more susceptible to wind damage because the shingles were well beyond their expected service life. Mr. Schoenberger determined that the water intrusion inside the church was consistent with water penetration through a deteriorated roof and flashing. However, Mr. Schoenberger did not identify any storm created openings on the property for water intrusion.

12.     Since Mr. Schoenberger's evaluation was consistent with Mr. Darrow's findings, PIIC opened two separate claim numbers – (1) Claim No. 1109504 for the 2014 hail damage and (2) Claim No. 1109511 for the 2016 wind damage. Mr. Darrow estimated $7,596.17 in replacement cost value for the hail damage and $6,375.85 in replacement cost value for the wind damage (hereinafter collectively referred to as "the Claims"). (True and accurate copy of Mr. Darrow's estimates are attached and incorporated as Exhibit F). After being unable to contact Mr. LaPointe

4

for several months, Mr. Darrow eventually shared his estimates with Mr. LaPointe on October 12, 2018. At that time, Mr. Darrow advised that payment would be made to Triedstone based on these estimates unless otherwise informed. Again, Mr. LaPointe never responded nor confirmed the estimates.

13. After yet another period of unresponsiveness, PIIC issued payment to Triedstone based on Mr. Darrow's estimates on November 22, 2017 pursuant to the Policies. PIIC issued payments totaling $5,414.62 for hail damage (amount less deductible & depreciation) and $583.30 for wind damage (amount less deductible & depreciation) and closed both claims on November 27, 2017. (A true and accurate copy of the payments are attached and incorporated as Exhibit G).

14. After the checks were cashed and several months had passed without hearing from either Triedstone or Matrix Adjusters, PIIC was contacted by Ms. Amy Berrios, a different adjuster at Matrix Adjusters, seeking to resolve the claims and requesting a re-inspection of the property. PIIC agreed to the re-inspection of the property which was conducted on June 5, 2018. As with the previous inspection, Mr. Darrow found that the exterior condition of the property was in the same condition as the previous inspection. The interior damages were also in similar conditions, with one area of recent repairs done by the insured over the winter months. Ms. Berrios continued to maintain the position that a complete replacement of both buildings' roofs and complete replacement of siding on one building were necessary. Mr. Darrow requested that Ms. Berrios submit a formal estimate for damages, which was received on July 18, 2018, despite the estimate bearing the date of June 18, 2018. Ms. Berrios's estimate was $97,257.94 for both the hail and wind claims. (A true and accurate copy of Triedstone's estimate is attached and incorporated as Exhibit H).

15. On or around August 3, 2018, Mr. Darrow sent a coverage position letter to Ms. Berrios stating that PIIC did not agree with Berrios' proposed scope and estimated repair cost

totaling $97,257.94 for both the hail and wind-related damages at the property. (A true and accurate copy of the August 3, 2018 letter is attached and incorporated as Exhibit I). The letter further advised that PIIC had approved a payment for the hail-related damage of $7,596.17 less the depreciation and the deductible for a gross payment of $5,414.62. PIIC issued this payment to Triedstone for its hail-related damages that occurred on May 20, 2014. Mr. Darrow also reserved all rights under the Policies on behalf of PIIC.

16. On August 14, 2018, Mr. Darrow sent another coverage position letter to Ms. Berrios relaying that PIIC did not agree with their $97,257.94 estimate and reserved all of PIIC's rights under the Policies. (A true and accurate copy of the August 14, 2018 letter is attached and incorporated as Exhibit J). After receiving no response to this letter, Mr. Darrow sent yet another letter to Ms. Berrios dated September 12, 2018 advising her that PIIC was not in agreement with her submitted repair estimate and had issued payment totaling $5,414.62 for confirmed hail-related damages. (A true and accurate copy of the September 12, 2018 letter is attached and incorporated as Exhibit K). According to Mr. Darrow, if he did not receive a response from Triedstone, he will assume that Triedstone was satisfied with the amount paid and close his file on October 12, 2018.

17. Subsequently, PIIC received two letters dated August 21, 2018 that bore no letterhead, was signed by the "Insured" with an illegible signature and addressed to "Mr. Garcia". Neither PIIC nor Mr. Darrow have been able to identify "Mr. Garcia". This letter, which referenced only Triedstone's claim for wind damage and demanded payment of the $97,257.94, Ms. Berrios' estimated damages, within 7 days. The letter also demanded appraisal of the amount of loss under the policy and appointed Mr. Joseph Lloyd as Triedstone's appraiser. (True and accurate copy of the August 21, 2018 letters are attached and incorporated collectively as Exhibit L).

18. On November 19, 2018, PIIC requested, pursuant to the Policies' Loss Conditions provision, that Triedstone produce certain documentation regarding the Claims and prior repairs

of the property by November 30, 2018, provide it with a Sworn Proof of Loss within 60 days of that letter or on or before January 19, 2019, provide information regarding its selected appraiser, Mr. Joseph Lloyd, and grant it permission to take samples of damaged and undamaged property for inspection, testing and analysis. (A true and accurate copy of the November 19, 2018 letter is attached and incorporated as Exhibit M).

19. In particular, PIIC requested that Triedstone produce the following books and records to assist Philadelphia with its investigation as well as the demand for appraisal:

   a. All estimates, contracts, proposals, scopes of work and any other documentation that pertains to or otherwise supports both the hail and wind claims, or any other damage figure Triedstone now seeks under the Policies;

   b. All work orders, invoices or other documents pertaining to any roof, siding, exterior or other hail, wind or storm-related damage for the property scheduled on the Policies subject to the Claims;

   c. All board minutes, meeting minutes or other communications or records referencing or otherwise discussing any roof, siding, exterior or other hail, wind or storm-related damage for the property under the Policies;

   d. Any receipts evidencing payments of any amounts ascribed to repairs, maintenance or upkeep of the roof, siding or exteriors for the property under the Policies;

   e. All estimates, contracts, proposals, scopes of work, invoices, receipts and any other documentation that pertain to or otherwise support any repairs, maintenance or upkeep of the roof, siding and exteriors of the property scheduled on the Policies for the past 10 years;

   f. Any receipts evidencing payments of any amounts ascribed to repairs, maintenance or upkeep of the roof, siding and exteriors of the property scheduled on the Policies for the past 10 years;

   g. All estimates, contracts, proposals, scopes of work, invoices, receipts and any other documentation that pertains to or otherwise supports any repairs, maintenance or upkeep of the interior of any property scheduled on the Policies for the past 10 years.

   h. Any receipts evidencing payments of any amounts ascribed to repairs, maintenance or upkeep of the interior of any property scheduled on the Policies for the past 10 years.

20. On December 21, 2018, PIIC advised Triedstone that it was proceeding with the appraisal and the Claims under a full reservation of rights and, consequently, had appointed Mr. Rhett Mays as its appraiser. (A true and accurate copy of the December 21, 2018 letter is attached and incorporated as Exhibit N). At that time, PIIC had not received any of the requested information from Triedstone regarding the Claims as set forth in its November 19, 2018 letter. Again, PIIC agreed to continue with the appraisal with the condition that Triedstone would comply with the aforementioned requests for information prior to the appraisal proceeding forward.

21. On January 29, 2019, PIIC afforded Triedstone a final opportunity to comply with the Policies' terms and conditions and provide the previously requested and above-outlined documents on or before February 11, 2019. (A true and accurate copy of the January 29, 2019 letter is attached and incorporated as Exhibit O). In that letter, as well as in the previous letters, PIIC emphasized that Triedstone's failure to provide the previously requested documentation will be considered a material breach of the Policies' terms by Triedstone and could result in the denial of part or all of the Claims.

22. On or around February 15, 2019, Ms. Berrios sent an email to PIIC enclosing Triedstone's Sworn Statement in Proof of Loss ("Proof of Loss") which was discreetly dated December 10, 2018. (A true and correct copy of Ms. Berrios' email to PIIC along with the Proof of Loss is attached hereto as Exhibit P).

23. On March 5, 2019, PIIC advised Triedstone that it was rejecting Triedstone's Proof of Loss because it was incomplete. Specifically, PIIC noted that Triedstone had failed to answer nine (9) of the twelve (12) sections on the Proof of Loss, specifically Sections 2, 4, 5, 7, 8, 9, 10, 11 and 12. PIIC further noted that Triedstone failed to produce copies of all estimates, inventories, receipts, bills, financial records, invoices, contracts and all other documents and materials that

support its pending insurance claim or that it has relied upon to prepare the Proof of Loss. (A true and accurate copy of the March 5, 2019 letter is attached and incorporated as Exhibit Q).

24.     On March 7, 2019, the appraisers inspected the insured property and executed the Declaration of Appraisers identifying Rick Domeracki as the umpire. (A true and accurate copy of the Declaration is attached and incorporated as Exhibit R).

25.     On March 11, 2019, PIIC advised Triedstone that its Public Adjuster, Ms. Berrios, had informed it that Triedstone does not intend to comply with PIIC's multiple, prior requests for documents and a fully completed Proof of Loss made pursuant to the terms and conditions of the Policies. PIIC further informed Triedstone that its failure to comply with its duties and obligations under the Policies constituted material breaches of the Policies. As a result of these material breaches, PIIC terminated the appraisal currently going forward with respect to the Claims and notified Triedstone that it will be filing this action. (A true and accurate copy of the March 11, 2019 letter is attached and incorporated as Exhibit S).

## THE POLICIES

26.     As noted above, PIIC advised Triedstone on numerous occasions that the requested information is required in order to determine whether the dispute can be appraised under the terms and conditions of the Policies. The requirement that Triedstone provide the previously requested documents is expressly set forth in the Policies, which provide in pertinent part the following:

**PROPERTY COVERAGE FORM**
\*     \*     \*

**E.     Loss Conditions**

> The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:
> \*     \*     \*
> **3.     Duties in the Event of Loss**
>
>> a.     You must see that the following are done in the event of "**loss**" to Covered Property:

>  \* \* \*
> 6. As often as may be reasonably required, permit us to inspect . . . records proving the "**loss**".
>
>    Also permit us to . . . to make copies from your books and records.
>    \* \* \*
> 9. Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.
>    \* \* \*
> 10. Cooperate with us in the investigation or settlement of the claim.
>
> \* \* \*

(True and accurate copies of the Policies attached and incorporated as Exhibits T and U, respectively).

## COUNT ONE

### *(Declaration of Material Breach of Post-Loss Conditions)*

27. PIIC adopts and incorporates by reference the allegations set forth in Paragraph Nos. 1 through 26 above as though completely and fully set forth herein.

28. As noted above, the Policies' Property Coverage Form, Form No. PI-ULT-007 11.98, contains the following duties that Triedstone must comply with in order to seek indemnity under the Policies:

> **PROPERTY COVERAGE FORM**
> \* \* \*
>
> **E.  Loss Conditions**
>
> The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:
> \* \* \*
>
> **3.  Duties in the Event of Loss**
>
> > a.  You must see that the following are done in the event of "**loss**" to Covered Property:
> > \* \* \*
> > 6.  As often as may be reasonably required, permit us to inspect . . . records proving the "**loss**".

10

>  Also permit us to . . . to make copies from your books and records.
>  \* \* \*
> 9. Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.
>  \* \* \*
> 10. Cooperate with us in the investigation or settlement of the claim.
>  \* \* \*

29. At all times relevant, Triedstone had a contractual duty pursuant to the above Policy conditions to permit PIIC to inspect and copy its books and records regarding the Claims, to provide a fully completed Proof of Loss containing information necessary to assist PIIC in its investigation of the Claims and to cooperate with PIIC in its investigation and settlement of the Claims. (*See* Exs. T and U, bate stamped pgs. Phila000028, Phila000173, respectively.)

30. Throughout the investigation and evaluation of the Claims, Triedstone has failed to comply with the above-referenced policy conditions. To date, Triedstone has produced its estimate of the loss pertaining to the Claims only and has refused to produce any of the additional requested documentation, including any damage or loss pertaining to the roof, siding and exteriors of the insured property, as well as any subsequent repairs and/or replacement to same, that has occurred within the past 10 years. This information is highly relevant to the Claims and demanded appraisal as it appears the roof of the insured property may have been repaired prior to the dates of loss.

31. Moreover, Triedstone has refused to comply with the Policies' conditions requiring it to provide Philadelphia with a fully completed Sworn Proof of Loss and supporting documentation. In its incomplete Sworn Proof of Loss, which Philadelphia rejected and returned on March 6, 2019, Triedstone failed to answer Sections 2, 4, 5, 7, 8, 9, 10, 11 and 12 of the form, rendering it substantially incomplete.

32. Triedstone was fully aware of PIIC's several requests for documentation and yet made no effort to ensure that PIIC obtained the requested documents.

33. Triedstone's breaches of the Policies' post-loss conditions have stifled PIIC's ability to conduct a full and complete evaluation of the Claims, including its ability to properly participate in the appraisal process.

34. As a result of Triedstone's failure to produce the requested information, the appraisal process was flawed due to the bias and partiality created by Triedstone's failure to equally provide information regarding the Claims despite its policy obligations. In fact, the appointed umpire has been compromised for he is now unable to ensure that such information is equally accessible to both parties. Essentially, Triedstone's material breaches of the Policies' conditions have prejudiced PIIC's ability to resolve the "amount of loss" in a binding matter at the level and amount it advocated for.

35. In sum, Triedstone is in clear violation and noncompliance with the terms and conditions of the Policies. Triedstone's failure to provide the previously requested documentation is a material breach of the Policies' terms by Triedstone and as a result, Philadelphia was forced to terminate the appraisal until Triedstone complies with the Policies' post-loss conditions.

36. Accordingly, these material breaches absolve PIIC of its obligation to provide coverage to Triedstone as a matter of law and renders the Policies void *ab initio*.

WHEREFORE, the Plaintiff, PHILADELPHIA INDEMNITY INSURANCE COMPANY, respectfully requests that this Court, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a) and Fed. R. Civ. P. 57, enter a declaratory judgment in its favor on Count One of the Complaint and against the Defendant, TRIEDSTONE FULL GOSPEL BAPTIST CHURCH, and specifically find, declare and order that:

    (A)    Defendant has materially breached the Policies' post-loss conditions relative to Claim Nos. 1109504 and 1109511 and that breach has prejudiced PIIC;

    (B)    Defendant's material breach of the Policies' post-loss conditions excuses PIIC from all further contractual, Policy obligations with respect to the Claims; and

    (C)    For any and all other relief that this Honorable Court deems necessary and just.

Date: March 26, 2019         Respectfully submitted,

                **PHILADELPHIA INDEMNITY INSURANCE COMPANY**

                By:   */s/ Rick Hammond, Esq.*
                      One of Its Attorneys

Rick Hammond, Esq.
Gordon K. Walton, Esq.
HEPLER BROOM, LLC
30 N LaSalle St., Ste. 2900
Chicago, Illinois 60602
Phone No. (312) 230-9100
Fax No. (312) 230-9201
Email: rick.hammond@heplerbroom.com
Email: gordon.walton@heplerbroom.com

***COUNSEL FOR PHILADELPHIA INDEMNITY INSURANCE COMPANY***

**DEMAND FOR JURY TRIAL**

NOW COMES Plaintiff, PHILADELPHIA INDEMNITY INSURANCE COMPANY, by and through its attorneys HEPLERBROOM, LLC, and hereby demands a jury trial in the above-captioned matter.

Date: March 26, 2019  Respectfully submitted,

        **PHILADELPHIA INDEMNITY INSURANCE COMPANY**

        By: */s/ Rick Hammond, Esq.*
            One of Its Attorneys

Rick Hammond, Esq.
Gordon K. Walton, Esq.
HEPLER BROOM, LLC
30 N LaSalle St., Ste. 2900
Chicago, Illinois 60602
Phone No. (312) 230-9100
Fax No. (312) 230-9201
Email: rick.hammond@heplerbroom.com
Email: gordon.walton@heplerbroom.com

***COUNSEL FOR PHILADELPHIA INDEMNITY INSURANCE COMPANY***

## **CERTIFICATE OF SERVICE**

I, Rick Hammond, hereby certify that on March 26, 2019 a true and correct copy of ***Philadelphia Indemnity Insurance Company's Complaint for Declaratory Judgment*** was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the all counsel of record who have heretofore appeared in this matter.

*/s/ Rick Hammond*